ESSEX WIRE CORPORATION v. GOLDEN.

1. Appeal and Error—Nonjury Case—Preponderance of Evidence.
   The Supreme Court does not reverse the judgment of the trial court in a nonjury law case unless the evidence clearly preponderates in the direction opposite to the finding of fact by the trial court.

2. Contracts—Lease Agreement—Evidence.
   Evidence adduced in action for damages for breach of claimed lease agreement of space in factory building *held,* not to preponderate against trial judge's finding that not all of the terms of the agreement had been agreed upon by the parties, especially where defendant's testimony that all he had sought was a 10-day option was unchallenged, the date when the claimed lease was to start appears to have been filled in after the option had been prepared, and no instruments, as called for by the document sued on, were ever executed, nor copy of the claimed lease ever given him.

Appeal from Wayne; Rushton (Carroll C.), J., presiding. Submitted October 8, 1964. (Calendar No. 26, Docket No. 49,716.) Decided January 5, 1965.

Assumpsit by Essex Wire Corporation, a Michigan corporation, against Irving Golden, doing busi-

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[2] 32 Am Jur, Landlord and Tenant § 28 *et seq.*

ness as Mortgage Investment Company, for damages on breach of claimed lease agreement. Judgment for defendant. Plaintiff appeals. Affirmed.

*Stern & Rossier,* for plaintiff.

*Sugar & Schwartz (Jordan Rossen,* of counsel), for defendant.

O'HARA, J. Plaintiff-appellant declared against defendant upon a written instrument which is herewith set out:

## "ESSEX WIRE CORPORATION

1601 Wall Street
Fort Wayne 6 Indiana

February 3, 1958

"Mr. Irving Golden
2459 National Bank Building
Detroit 26, Michigan

*"Dear Mr. Golden:*
"It is our understanding that you are interested in renting approximately 100,000 square feet of the one-story building formerly known as Building #22 of the Studebaker-Packard Corporation.

"Essex Wire Corporation hereby offers to lease the rear or westerly portion of Building 22 together with one toilet room and locker room in the raised monitor section and, in addition, a corridor along and through the southerly end of the 4-story building numbered 22, to permit pedestrian traffic between the main rented portion and Concord avenue. Access to the rear of the property may be had via Packard avenue to the north of Building 22, which extends to Concord avenue, or by Packard avenue westerly of Building 22, extending to East Grand Boulevard, all of the building area so described to approximate 100,000 square feet. Lease to start about Apr. 1, 1958.

"Light, heat and water will be sub-metered to the property so leased and billed to you as lessee.

"The rental will be at the rate of 40¢ per square foot per year based upon the 100,000 square foot figure.

"The term of the lease will be 5 years and an option will be granted you whereby an additional 5-year term may be elected by you.

"We further agree that, after acceptance of this offer, as indicated below, you may cancel this letter agreement at any time up to and including February 14, 1958. This letter agreement will be irrevocable after that date and formal papers will thereafter be executed to effect the above agreement.

"Accepted this 4th           "ESSEX WIRE CORPORATION.
day of February, 1958
/s/ IRVING GOLDEN     By /s/ PAUL W. O'MALLEY"
Irving Golden
WO 32186"

The execution is not denied. Defendant further concedes that after the date of acceptance, February 4, 1958, he had no conversation with the negotiating representative of plaintiff corporation until "ten days after the expiration date * * * give or take a few days." Thus it may be accepted that if notice of cancellation were requisite on or before February 14, 1958, it was not so given.

Plaintiff concedes that after February 14, 1958, no instrument of any kind was ever tendered by it and to defendant, and that its case must "stand or fall on this [the foregoing] agreement *and the testimony.*" There of course lies the rub. Absent testimony concerning the circumstances of the execution of the instrument, and the conduct of the parties in relation to it immediately after the execution, the issue here would be very narrowly circumscribed. We would, as plaintiff urges, be concerned only with the interpretation of a written instrument, the execu-

tion of which is not denied and the notice of cancellation whereof was not timely given.

As perceived by the able trial judge whose regretful demise since decision brought sorrow to bench and bar alike, such was not the issue *en toto*. Both the answer and the pretrial statement place in issue, the question of whether *any* agreement was in fact ever reached between the parties.

The testimony reveals that defendant himself is a real-estate broker. He claims he heard, through another realtor, that some 100,000 square feet of warehousing space was available through defendant, and that he merely sought an option thereupon for 10 days in order to try to lease it to a prospect of his own. He denies he ever talked to the representative of plaintiff until that representative, the signatory witness O'Malley, called him to inquire how he (defendant) was "coming along with my [defendant's] deal on the Essex Wire properties * * * on which I [defendant] had taken an option." Defendant contends that all his pre-execution conversation was with a representative of another realtor, a Mr. Chesborough, with whom the involved property was already listed as available for lease, and that Mr. Chesborough gratuitously obtained for him a 10-day option.

Plaintiff controverts all or at least most of the foregoing. Through its Mr. O'Malley, it asserts that he, O'Malley, negotiated directly with defendant Golden; that the terms of the agreement were discussed by telephone, or possibly in personal interview, and reduced to writing by O'Malley; that defendant called O'Malley after February 14th to say that he (defendant) realized that he hadn't canceled the agreement on time, but that he was sure Essex would not "hang him [defendant] on a technicality" or words to that effect.

Distilled to its essence, this case then presents controverted issues of fact. On these issues the trier of the facts—in this case the trial judge without a jury—found against plaintiff. He set forth his findings and reasons in part as follows:

"He dealt with Mr. Chesborough, the agent of the plaintiff, and may have talked to Mr. O'Malley, an officer and attorney for the plaintiff, on the telephone. I believe that he could reasonably assume that this was in the form of an option, as he requested from Mr. Chesborough, for a 10-day period, and that as stated in the last sentence of this document, 'This letter agreement will become irrevocable after that date, *and formal papers will thereafter be executed to effect the above agreement.'* (Emphasis the trial court's.) No copy of this agreement was ever sent to Mr. Golden, and I believe he could reasonably assume that a formal lease, in formal legal language, duly sworn to and witnessed, would be forthcoming, if he chose to exercise his rights to demand such a lease before the 10-day period expired. He testified that he had told Mr. Chesborough he wanted only an option on the building. Mr. Chesborough was in the courtroom throughout the trial. He was not called to testify. Mr. Golden's testimony, therefore, goes unchallenged in this respect.

"Another matter of some significance to me is that at the end of the second paragraph of this agreement, at the last sentence beginning 'Lease to start;' a blank line was typed in, and somebody later wrote in in longhand, 'April 1, 1958.' There was no testimony as to who wrote this in, and I think we can assume that at the time the letter was typed it was left vacant, otherwise why the line?

"This adds to the general impression that all of the terms had not been thoroughly agreed upon by the parties.

"The plaintiff having failed to prove its case by the preponderance of the evidence, the request by

the defendant for a verdict of no cause of action, is granted."

We can only repeat in disposition here what we have said times without number before, and as lately as in *Acton Plumbing & Heating Co.* v. *Jared Builders, Inc.,* 368 Mich 626, p 630:

"This is a law action tried before the court without a jury. We do not reverse in such a case unless the evidence clearly preponderates opposite to the finding of facts of the trial court. *Sorel* v. *Crantz,* 362 Mich 154."

Clearly the evidence here does not preponderate against the trial judge's finding.

The judgment of the trial judge is affirmed. Appellee may tax costs.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, and ADAMS, JJ., concurred.

SOURIS, J., did not sit.